```
                   UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                           )
SECURITIES AND EXCHANGE COMMISSION,        )
                                           )
              Plaintiff,                   )
                                           )
         v.                                )   C.A. No. 15-191 S
                                           )
                                           )
PATRICK CHURCHVILLE,                       )
CLEARPATH WEALTH MANAGEMENT, LLC,          )
                                           )
              Defendants,                  )
                                           )
      and                                  )
                                           )
CLEARPATH MULTI-STRATEGY FUND I, L.P.,     )
CLEARPATH MULTI-STRATEGY FUND II, L.P.,    )
CLEARPATH MULTI-STRATEGY FUND III, L.P.,   )
HCR VALUE FUND, L.P.,                      )
                                           )
              Relief Defendants.           )
_____)

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Acrewood Holdings, LLC, Acrewood Investment Management, L.P., Acrewood 2013, L.P., and Acrewood 2014 L.P.'s (collectively "Acrewood") Motion for Allowance for Payment of Legal Fees, Costs and Expenses ("Motion"). (ECF No. 43.) Both the Receiver and the Securities and Exchange Commission ("SEC") filed Responses (ECF Nos. 48 and 50), and Acrewood filed a Reply (ECF No. 52). For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Acrewood's Motion.

I. Background

The parties are familiar with the facts of this dispute; accordingly, the Court only recounts those pertinent to this Order. On May 7, 2015, the SEC commenced a civil enforcement action against Patrick Churchville, his firm ClearPath Wealth Management, and a number of funds Churchville managed. According to the Complaint, Churchville, through his firm, "misappropriated and misused his investors' cash and assets through a years-long fraudulent scheme." (Compl. ¶ 1, ECF No. 1.)

The HCR Value Fund ("HCRVF" or the "Fund") was one of the funds that Churchville managed. The Court need not detail HCRVF's structure. Suffice it to say that a Churchville entity and Acrewood were the Fund's only partners. Acrewood was a limited partner and had a significant, multi-million dollar investment in the Fund. Churchville was the general partner, entitled to a management fee, but invested only a small amount in the Fund. The HCRVF sub-fund at issue here invested in a single entity, CP Health, which was managed by Capio Asset Holdings, LLC and affiliated entities ("Capio").

When the SEC filed its Complaint against Churchville, Acrewood took steps to protect its investment in HCRVF. First, and central to this fee dispute, Acrewood's and Churchville's counsel negotiated and executed the "Agreement Regarding Continuing Operations of HCR Value Fund" ("ARCO" or the

2

"Agreement") on May 21, 2015. Among other things, the Agreement provided Acrewood with management authority over the Fund. It also included a "Cost Reimbursement" provision, in which Churchville - knowing that the SEC had already filed an action against him - agreed "to indemnify [Acrewood] for any reasonable out-of-pocket costs incurred by them in connection with the SEC Action, [the ARCO] and any actions reasonably undertaken in connection therewith." (See Acrewood Mem. in Sup. of Mot. ¶ 23, ECF No. 43-1.) Neither the SEC nor the Court approved the Agreement prior to its execution.

Between May 12, 2015 and July 30, 2015, Acrewood also worked to preserve its investment in HCRVF by keeping the Fund out of default. In May and June 2015, it negotiated with the Fund's bank to prevent the bank from defaulting the Fund's line of credit and seizing the Fund's assets. Also, around the same time, Acrewood worked with Churchville and the SEC to ensure that any court action did not damage the value of HCRVF. These efforts resulted in the SEC seeking a separate freeze order relating to HCRVF that would "ensure that money that is due to [HCRVF] by third parties may be paid to [HCRVF] and, once paid, will be either frozen or distributed to investors." (See Comm'n's Mot. for Order Concerning HCR Value Fund 1-2, ECF No. 15.)

On June 2, 2015, the Court issued a preliminary injunction. (ECF No. 13.) As the parties requested, this injunction did not

include HCRVF. (Id. at 1.) Instead, on July 30, 2015, the Court entered a separate order relating to HCRVF, which accomplished three things: (1) it required Capio to continue to make payments to HCRVF; (2) it froze any funds distributed to HCRVF; and (3) it allowed HCRVF to "continue to operate, pursuant to the terms of the [ARCO]," which included allowing Acrewood to assume management of HCRVF, provided that "[n]o financial interest of [Churchville] . . . be dissipated or diminished." (Order Concerning HCR Value Fund, L.P. ¶¶ I, II, III, ECF No. 17.)

Also on July 30, 2015, the Court created an equitable receivership and appointed Stephen F. DelSesto, Esq. as Receiver "for the purposes of marshaling and preserving" Churchville's assets. (Order Appointing Receiver 1, ECF No. 16.) In discharging its duties, the Court limited the Receiver's fees to "reasonable compensation and expense reimbursement" (id. ¶ 59), which amount to $350 per hour for partners, between $250 and $295 per hour for associates, and $140 to $185 per hour for paralegals. (See Receiver's Resp. to Mot. 12, ECF No. 48; Receiver's First Interim Fee Application 2, ECF No. 49.)

After the Receiver's appointment, Acrewood worked with him to wind down HCRVF. Specifically, Acrewood negotiated a settlement with Capio that facilitated the final payments to HCRVF. Acrewood's attorneys also prepared Amendment No. 1 to HCRVF's Limited Partnership Agreement, which allowed Acrewood to become a

4

special limited partner in the Fund for the purposes of winding it down. (See Receiver's Pet. for Inst. Regarding the Proposed "HCR Value Fund, L.P. Amed. No. 1 to the Ltd. P'ship Agreement" ¶ 17, ECF No. 20.)

Acrewood, however, did not limit its efforts to assisting the Receiver. Even after the Receiver's appointment, it incurred a number of legal fees aimed at protecting its own interests. The motions surrounding the present fee dispute constitute the most substantial of these efforts. (See e.g., Ex. A to Decl. of Jamie Barrett in Support of Mot. 24-26 (Nov. 9, 2015 Pepper Hamilton Invoice), ECF No. 44-1.) But Acrewood also advanced its own interests in other ways, by, for example, developing its own litigation strategy against Capio, and seeking independent legal advice "regarding several summary analyses prepared by [Acrewood] of the distributions that would be made by [HCRVF] in various scenarios." (Mot. ¶¶ 45, 47, ECF No. 43-1.)

Acrewood now seeks to recover all of the legal fees it incurred in relation to HCRVF and the SEC's action. It argues that ARCO's Cost Reimbursement provision entitles it to complete indemnification for these expenses. The SEC and Receiver oppose Acrewood's fee petition, at least in part. They argue that the Receiver is not bound by the ARCO and that Acrewood is not entitled to complete indemnification. Nevertheless, both acknowledge that Acrewood may be entitled to recover some of its fees.

II. Legal Standard

There is little case law relating to equitable receiverships. Accordingly, Acrewood and the Receiver rely on cases interpreting the U.S. Bankruptcy Code (the "Code") and the leading treatise on equitable receiverships, 2 Clark on Receivers (3rd ed. 1959. Both treat pre-petition and pre-receivership executory contracts such as the ARCO similarly.

Generally, under Chapter 11 of the Code, debtors in possession are liable for services performed under pre-bankruptcy contracts in two circumstances. First, the debtor in possession can expressly assume liability for pre-bankruptcy contracts, with court approval, at any time during the bankruptcy. 11 U.S.C. § 365(a). If the debtor in possession assumes the contract, "it assumes the contract cum onere, and the liabilities incurred in performing the contract will be treated as administrative expenses." In re FBI Distribution Corp., 330 F.3d 36, 42 (1st Cir. 2003) (internal quotation marks and citations omitted). Second, where a debtor in possession induces a party to perform under an unassumed pre-petition contract, the party "will be entitled to administrative priority only to the extent that the consideration supporting the claim was supplied to the debtor in possession during the reorganization and was beneficial to the estate." Id. at 42-43. Where the debtor in possession elects to continue to receive benefits from a pre-petition contract prior to

6

adopting the contract, the debtor in possession "is obligated to pay for the reasonable value of those services." Id. at 43-44 (emphasis in original) (quoting N.L.R.B. v. Bildisco, 465 U.S. 513, 531 (1984)).  If, on the other hand, the debtor in possession rejects the contract and does not receive benefits from it, the other contracting party has a pre-petition general unsecured claim for breach of contract damages and is not entitled to any administrative priority.  Id. at 42.

The authority relating to equitable receiverships echoes this legal framework.  While there is little case law on point, the leading treatise treats receivers in the same way bankruptcy case law treats debtors in possession.  It first notes that "[t]he receiver is under no obligation to the parties to [a pre-receivership] contract to perform such contract on behalf of the debtor."  Clark, supra, § 428.  Rather, for a pre-receivership contract to bind a receiver, "the receiver must positively indicate his intention to take over the contract."  Id. § 428(a).  Further, where a receiver takes advantage of a pre-receivership contract without adopting it, "he may do so without necessarily committing himself to an adoption thereof."  Id.  Instead, the receiver is liable for "the value of the benefit [received by] the estate not exceeding the compensation stipulated by the contract."  Id.

7

III. Analysis

Based on these authorities, neither the Court nor the Receivership is bound by the ARCO. Acrewood argues that the Court and Receivership adopted the ARCO in the Court's July 30, 2015 Order (ECF No. 17), which the Court entered on the same day it appointed the Receiver. Having just been appointed, the Receiver did not petition the Court to adopt the ARCO on July 30, nor has it subsequently petitioned the Court to do so. Further, the Court did not independently adopt the ARCO or its indemnification provision in the Order. As the SEC noted in its motion to adopt the Order, the Order was "intended as a supplement to the Order Imposing Preliminary Injunction . . . ." (Comm'n's Mot. for Order Concerning HCR Value Fund, L.P. 2, ECF No. 15.) The Order, thus, merely preserved the status quo until the Receiver could take control of the estate and decide which, if any, pre-receivership contracts to assume. Since the Receiver has not asked the Court to adopt the ARCO or its indemnification provision, neither the Receiver nor this Court is bound by it. See Clark, supra, § 428(a) ("In order that the receiver may be absolutely bound by a contract of the debtor, the receiver must positively indicate his intention to take over the contract.").

This, of course, is not the end of the story. As the Receiver readily admits, Acrewood provided services under the ARCO that benefited the Receivership. The Receivership, thus, must pay for

8

the reasonable value of these services. See In re FBI Distribution Corp., 330 F.3d at 43-44. The parties, however, dispute what services benefited the Receivership and how the Court should define the reasonable value of those services. The Court resolves the parties' disputes as follows.

First, the Receivership is only liable to Acrewood for services that it rendered during the pendency of the Receivership. See id. at 42-43 (holding that debtor in possession only liable for services rendered "during the reorganization"). Consequently, the Court will not consider Acrewood's fee petition to the extent it requests fees accrued before July 30, 2015, the date the Court created the Receivership. For fees relating to services Acrewood rendered to the Fund prior to July 30, 2015, Acrewood is free to file a claim with the Receiver pursuant to the Receivership's claims process.

Second, as noted above, Acrewood is only entitled to compensation for services that benefited the Receivership. Id. (stating that debtor in possession only liable for services beneficial to the estate); Clark, supra, § 428(a) (noting that if the receiver uses services without adopting a contract, "he is liable for such usage during the time the other party was, without its consent or acquiescence, held subject to the contract."). After carefully reviewing the parties' briefs and the post-July

9

30, 2015 invoices Acrewood submitted in support of its petition, the Court breaks down Acrewood's fee petition as follows:

- **Pepper Hamilton September 18, 2015 Invoice**. This invoice covers services the law firm Pepper Hamilton provided to Acrewood during August 2015, the first invoice submitted after the establishment of the Receivership. In it, Pepper Hamilton bills Acrewood for (1) drafting and revising Amendment No. 1 to HCRVP's partnership agreement; and (2) negotiating and drafting a settlement agreement with Capio. These services facilitated HCRVF's winding down, a task the Receiver would have had to complete. Consequently, these services benefited the Receivership and the Receivership must pay Acrewood a reasonable value for them.

  Pepper Hamilton billed Acrewood 9.80 hours for work by a partner for the services. (See Ex. 1 to Decl. of Jamie Barrett 16-19, ECF No. 44.)

- **Pepper Hamilton October 5, 2015 Invoice**. This invoice covers services provided to Acrewood in September 2015. Like the previous invoice, this one seeks compensation for Pepper Hamilton's work revising Amendment No. 1 and negotiating the settlement agreement with Capio. Again, these services benefited the Receivership, entitling Acrewood to recover a reasonable fee for them.

  Pepper Hamilton billed Acrewood 6.00 hours for work by a partner.

  The services reflected in Pepper Hamilton's final three entries (9/24/15 J. Corelli; 9/30/15 J. Corelli; and 9/30/15 J.A. Dubow), however, involve Acrewood's attempts to enforce the ARCO and recover its fees. These services did not benefit the Receivership; they were intended solely to protect Acrewood's interests. Consequently, the Court denies Acrewood's Motion as it relates to these fees, which total 2.5 hours of work by two partners. If Acrewood believes it incurred these fees pursuant to a contract it had with Churchville or one of his entities, it is free to file a claim with the Receiver pursuant to the Receiver's claims process. (See id. at 20-23.)

- **Pepper Hamilton November 9, 2015 Invoice**. This invoice covers services provided to Acrewood in October 2015. The vast majority of entries on this invoice concern Acrewood's

response to the Receiver's September 30, 2015 Petition for Instructions (ECF No. 20), which first brought the present fee dispute to the Court's attention. The work reflected in these entries protected Acrewood's interests – its ability to recoup its fees from the Receivership. It did not benefit the Receivership. Thus, except as specified in the next paragraph, the Court denies Acrewood's Motion as it relates to the fees from this invoice. Again, if Acrewood believes it incurred these fees pursuant to a contract it had with Churchville or one of his entities, it is free to file a claim with the Receiver pursuant to the Receiver's claims process.

Five entries, however, involve the settlement agreement with Capio. These entries are (1) 10/11/15 J. Corelli; (2) 10/12/15 J. Corelli; (3) 10/14/15 J. Corelli; (4) 10/21/15 C.O. Hud; (5) 10/27/15 J. Corelli. As explained above, this work benefited the Receivership, and Acrewood is entitled to a reasonable fee for the services.

Pepper Hamilton billed Acrewood 5.15 hours for work by a partner and 0.10 hours for work by an associate for these services. (See Ex. 1 to Decl. of Jamie Barrett 24-29, ECF No. 44.)

- **Dechert September, October and November 2015 Invoices**. These invoices cover services the law firm Dechert LLP provided to Acrewood after the establishment of the Receivership. The services exclusively concern the settlement agreement Acrewood negotiated with Capio. As noted above, this settlement agreement facilitated the winding down of HCRVF, which benefited the Receivership. Consequently, Acrewood may recover a reasonable fee for them.

  For this work, Dechert billed Acrewood 4.5 hours for work by a partner and 24.6 hours for work by an associate. (See id. at 35-50.)

- **Adler Pollock & Sheehan ("APS") November 10, 2015 Invoice**. APS acted as Acrewood's local counsel for the present fee dispute. As noted above, these efforts sought to protect Acrewood's interests, not the Receivership's. The Court, thus, denies Acrewood's Motion as it pertains to these fees. If Acrewood believes it incurred these fees pursuant to a contract it had with Churchville or one of his entities, it is free to file a claim with the Receiver

11

    pursuant to the Receiver's claims process. (See id. at 51-53.)

In sum, Acrewood's attorneys performed a total of 50.15 hours of work that benefited the Receivership. Partners at Acrewood's law firms performed 25.45 hours of this work; associates performed 24.7. The Court grants, Acrewood's Motion as to these hours.

  Third, the Court must determine a reasonable value for the services Acrewood provided to the Receivership. See In re FBI Distribution Corp., 330 F.3d at 44 (holding that where debtor in possession does not adopt a contract, service provider is "entitled to only the reasonable value of her postpetition services that benefitted the estate"); Clark, supra, § 428(a) ("The measure of [liability for services rendered] is not necessarily that prescribed by the contract, but is the value of the benefit such as interim usage has been to the estate not exceeding the compensation stipulated in the contract."). Here, Acrewood provided legal work to the Receivership that the Receiver otherwise would have had to complete. The Court identified a reasonable value for such services when it approved the Receiver's rates: partners may bill no more $350 per hour, associates may bill no more than $295 per hour, and paralegals may bill no more than $185 per hour. (See Receiver's Resp. to Mot. 13, ECF No. 48; Receiver's First Interim Fee Application 2, ECF No. 49.) Since Acrewood performed work on behalf of the Receiver, it is reasonable that

the Receivership should compensate it at the Receiver's rates. Accordingly, Acrewood is entitled to the following fees:

    Partners:       25.45 hours x $350 = $8,907.50

    Associates:     24.7 hours x $295 = $7,286.50

    Total:          $16,194.00

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
Chief Judge
Date:  July 12, 2016